United States District Court
Southern District of Texas
**ENTERED**
February 06, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SYSCO MERCHANDISING & SUPPLY | § | |
| CHAIN SERVICES, INC., *et al.*, | § | |
| | § | |
|     **Plaintiffs,** | § | |
| | § | |
| VS. | § | **CIVIL ACTION NO. 4:22-CV-02075** |
| | § | |
| REMCODA, LLC, *et al.*, | § | |
| | § | |
|     **Defendants.** | § | |

## MEMORANDUM & ORDER

Plaintiffs Sysco Merchandising and Sysco Corp. ("Sysco") purchased a large quantity of single-use gloves from Defendant Remcoda. Sysco subsequently filed this suit against Remcoda, IBrands, and Remcoda's CEO, Remy Garson. Sysco brings twelve claims, primarily related to fraud and breach of contract, alleging that Defendants falsely represented that (1) the gloves were nitrile; (2) the gloves would be inspected twice; and (3) Defendants would provide credits for all non-conforming gloves.

Defendants moved to dismiss. ECF No. 26. For the reasons that follow, the Motion is **GRANTED IN PART** and **DENIED IN PART**. Counts 6, 7, 8, 9, and 12 are **DISMISSED WITHOUT PREJUDICE**. All other claims may proceed, subject to the limits discussed below. Defendants' Motion for a Protective Order, ECF No. 32, is **DENIED AS MOOT**.

## I.    BACKGROUND[1]

At the start of the COVID-19 pandemic, the demand for single-use nitrile gloves dramatically increased.  ECF No. 1 ¶ 18. During this time, Remcoda and IBrands worked

---

[1] At this stage, all well-pleaded factual allegations are accepted as true. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

together to sell these gloves to businesses in the food services industry. *Id.* ¶ 16. IBrands took out more than $70 million to finance this venture, and Remcoda trademarked the name "Bluzen" for its gloves and used marketing "to indicate that Defendants were manufacturing, importing, and supplying disposable nitrile gloves." *Id.* ¶ 18.

Sysco alleges that Defendants "repeatedly represented to Sysco that they could supply gloves that were made of nitrile, latex-free, and that complied with the Federal Food Drug, and Cosmetic Act and its implementing regulations ('FDCA')." *Id.* ¶ 20. The parties negotiated prices and shipping dates. *Id.* Defendants represented that (1) they were responsible for the quality of the gloves, which would all be branded with the Bluzen trademark; and (2) the gloves would be inspected twice, first at the manufacturing facility and then upon arrival in the United States. *Id.* ¶ 21.

Subsequently, Sysco and Remcoda entered into a series of agreements, which the parties collectively refer to as "the Contract." *Id.* ¶ 22. The Contract includes: (1) the Hold Harmless Agreement/Warranty of Product, ECF No. 1-2; (2) the Supplier Authorization Agreement, ECF No. 1-1; and (3) more than 250 purchase orders for nitrile gloves, ECF No. 26-1 at 6-93.[2] Over the course of 2020 and 2021, Sysco purchased 687,402 cases of Bluzen Nitrile Gloves for $78,429,665.20. ECF No. 1 ¶ 27.

The Complaint includes pictures of the glove shipments. Each case is labeled "Bluzen," "Disposable Nitrile Gloves," and "Protective Gear." ECF No. 1 ¶ 32. The cases contain 100-glove boxes with the same labels. *Id.*

---

[2] Although Sysco did not attach these purchase orders to the Complaint, the Court considers them because these documents are part of the Contract referenced in the Complaint. *See* ECF No. 1 ¶ 22.

Sysco alleges that it received its first shipment of gloves in February 2021. *Id.* ¶ 34. Sysco began reselling the gloves to its customers. *Id.* ¶ 37. In March 2021, Sysco started receiving customer complaints and reported the complaints to Garson (Remcoda's CEO). *Id.* ¶¶ 37, 39. Garson stated that Remcoda "will always be willing to provide credits" for defective products and that Defendants 'stand behind [their] products.'" *Id.* ¶ 39. Sysco continued to order more gloves. *Id.*

Sysco alleges that, in response to customer complaints, it sent samples of the gloves to SGS Polymer Solutions to be tested. *Id.* ¶ 40. The test results revealed that the gloves were not nitrile, as labeled, but instead were vinyl. *Id.* ¶ 41. Sysco alleges that it "was unaware that Defendants' representations . . . were false" until it received the results of this testing. *Id.* ¶ 43.

Sysco alleges that it revoked acceptance after receiving these test results, but that Defendants failed to retrieve the nonconforming gloves or refund Sysco. *Id.* ¶ 44.

Sysco then filed this lawsuit. Defendants moved to dismiss. ECF No. 26. Sysco responded, ECF No. 30, and Defendants replied, ECF No. 31. Subsequently, Defendants moved for a Protective Order. ECF No. 32. Sysco responded, ECF No. 35, and Defendants replied, ECF No. 37.

## II.   STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering such a motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## III.   ANALYSIS

### A.  Whether the FDCA Applies

As a threshold matter, the parties dispute whether the gloves are "medical devices" under the Food Drug, and Cosmetic Act (FDCA). A medical device must be "(A) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them"; "(B) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals"; or "(C) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(h)(1). The Court finds that Sysco has adequately alleged that the FDCA applies.

Sysco focuses on the second prong of the medical-device definition, contained in § 321(h)(1)(B), which applies to devices that are "intended for use . . . in the . . . mitigation . . . or prevention of any disease."[3] This language, Sysco argues, encompasses the gloves at issue. In Sysco's view, the gloves are used to mitigate or prevent COVID-19 and therefore fit within the

_____

[3] The Court observes that the phrase "intended . . . use" also appears in applicable regulations governing the labeling of such devices. Those regulations provide that the "intended use[]" of a device "refer[s] to the objective intent of the persons legally responsible for the labeling of an article," and that this intent can be shown from a range of factors including "the circumstances surrounding the distribution of the article," "labeling claims," and "oral or written statements by such persons or their representatives." 21 C.F.R. § 801.4.

FDCA's definition of "medical device." Defendants disagree, contending that the gloves were intended for resale in the food service industry and therefore do not count as medical devices.

The crux of the parties' dispute is as follows. Defendants argue that because the gloves are used for handling food, they are not intended for medical purposes. Sysco says that no matter the context in which the gloves are used, their purpose is to prevent disease and, therefore, they are medical devices.

Sysco's interpretation is more persuasive. Gloves may be used to mitigate or prevent disease even if not being used in a medical setting. In other words, as long as the purpose of wearing the gloves is to protect against disease, the gloves are serving a medical purpose. Consider another example. It seems to defy credibility to say that a face mask used to stop the spread of COVID-19 is a medical device when worn in a medical setting but not a medical device when worn in a grocery store or shopping mall. The same logic holds true for gloves.

Indeed, there are many medical devices that fall under the FDCA that are used outside of a medical setting. *See, e.g.*, 21 C.F.R. § 800.10 (regulating contact lens solutions); *id.* § 800.30 (over-the-counter hearing aids). The regulation of these products indicates that the "medical devices" category is not limited to products used in a medical setting.

The relevant inquiry, then, does not focus on the setting in which the gloves were intended to be used; rather, it asks what the gloves were used for. Sysco alleges that the gloves were used to prevent disease, especially COVID-19. *See, e.g.*, ECF No. 1 ¶ 18 (gloves were used in the food services industry "[i]n an effort to slow the transmission of COVID-19"). Defendants contend that the purpose of these gloves was to help in food contact and handling, pointing to allegations in the Complaint that "[n]itrile gloves . . . are the ideal gloves for workers in the food service industry because they are puncture resistant, hypo-allergenic, highly chemical resistant,

durable, form-fitting, and have low friction resistance." *Id.* ¶ 17. But Defendants' argument begs the question of why workers in the food service industry wear gloves with these characteristics in the first place. A plausible reason is hygiene or, put differently, to stop people from getting sick. This was the case before COVID-19, and this purpose became heightened during the COVID-19 crisis. If the gloves were not medical devices, the demand for the gloves would not have proliferated during the medical crisis. A plausibly pleaded purpose of these gloves is to mitigate or prevent disease.

These pleadings adequately allege that the gloves were intended to prevent the spread of disease and therefore constitute a medical device under the FDCA.

### B.  Counts 1-3: Fraud-Based Claims

Sysco brings three fraud-based claims: fraudulent inducement, fraud, and negligent misrepresentation. *See* ECF No. 26 at 16-23. Defendants move to dismiss these counts, arguing: (1) much of the alleged misrepresentations relate to future performance, not existing fact; (2) Sysco failed to allege falsity; (3) Sysco fails to allege to fraudulent intent; (4) Sysco fails to plausibly allege reliance; and (5) Sysco fails to plead fraud with sufficient particularity. Defendants are incorrect or partially incorrect on all counts.

For the reasons that follow, Sysco's fraud claims may proceed only to the extent that Sysco alleges that Defendants made false statements of existing fact. Sysco has not pleaded the scienter needed to support a fraud claim related to future performance. That being said, Sysco has alleged that Defendants falsely told Sysco that it had provided nitrile gloves in prior shipments. These are statements of existing fact, and Sysco may proceed with its fraud-based claims with respect to these statements.

### 1.  Future Performance, Falsity, and Fraudulent Intent

Defendants argue that the alleged misrepresentations relate to promises of future conduct, not existing fact. Defendants contend that "each of the alleged misrepresentations are that Remcoda 'could' or 'would' perform some act: that it *could* provide certain gloves, *would* perform unidentified inspections, *would* manufacture the gloves in unidentified facilities, and *would* 'stand behind' its products." ECF No. 26 at 17. Defendants further argue that Sysco failed to adequately plead falsity or fraudulent intent.

A misrepresentation regarding future conduct typically cannot support claims for fraudulent inducement, fraud, or negligent misrepresentation. *Guajardo v. JP Morgan Chase Bank, N.A*, 605 F. App'x 240, 246 (5th Cir. 2015); *see Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 358 (5th Cir. 1996) ("misstatement as to a *future* action" "is not actionable"); *BCY Water Supply Corp. v. Residential Inv., Inc*., 170 S.W.3d 596, 603 (Tex. App. 2005) ("A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact.").

In limited circumstances, however, "[f]raud claims based on promises of future conduct may proceed," but only where a plaintiff can "establish that the defendant intended not to perform at the time it made the promise at issue." *Guajardo*, 605 F. App'x at 246; *see Clardy*, 88 F.3d at 360. "However, '[f]ailure to perform, standing alone, is no evidence of the[] intent not to perform when the promise was made.'" *Guajardo*, 605 F. App'x at 246 (quoting *Spoljaric v. Percival Tours, Inc*., 708 S.W.2d 432, 435 (Tex. 1986)). "'Slight circumstantial evidence' of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010) (per curiam) (quoting *Spoljaric*, 708 S.W.2d at 435).

Here, most of the allegedly false statements relate to *future* conduct. *See, e.g.*, ECF No. 1. ¶¶ 50, 58, 67 (representation that Defendants "would expect and perform quality control on the nitrile gloves twice"); *id.* ¶¶ 51, 59, 68 (representation that the gloves "would be manufactured in facilities where the gloves had been tested and inspected by independent third parties").

Sysco fails to plead facts adequately to allege that Defendants intended not to perform at the time the promises were made. Sysco asserts that it alleged "circumstantial evidence of fraud" by alleging that Defendants knew of counterfeit products and represented the gloves would comply with the FDCA. *See* ECF No. 30 at 20 (citing allegations in Complaint). But these allegations go to what Defendants knew about the market in general—they do not shed light on whether Defendants intended to perform at the time of the promise.

That being said, Sysco does plead some misstatements of existing fact. Specifically, Sysco alleges that Defendants represented that they "did" provide nitrile gloves to Sysco. *Id.* Sysco repeatedly placed orders over time, and those orders relied in part on Defendants' representations that all previously fulfilled orders had contained nitrile gloves. These representations are statements of existing fact.[4]

In sum, to the extent that Sysco alleges misrepresentations regarding future conduct, the fraud-based claims have not been adequately pleaded. However, Sysco adequately alleges that Defendants misrepresented existing facts—that they previously had provided nitrile gloves—and these allegations are sufficient for the fraud-based claims to proceed.

---

[4] Sysco also argues that an additional allegation relates to a representation of present fact: the allegation that Defendants represented that they "could" provide nitrile gloves. *See, e.g.*, ECF No. 1 ¶¶ 49, 57, 66. In Sysco's view, this is a representation of existing capacity to provide gloves. The Court disagrees. Sysco alleges that Defendants agreed to provide gloves in the future. Therefore, any statement that they "could" provide gloves relates to *future* capacity to provide gloves, and is not a statement of existing fact. Put differently, a person's promise that they *will* do something necessarily implies that the person *can* do that thing. But that implication does not convert the promise into one that relates to existing fact.

### 2.   Reliance

Next, Defendants argue that Sysco fails to plausibly allege reliance. Defendants contend that (a) Sysco's reliance is unreasonable as a matter of law; and (b) Sysco disclaimed reliance in the Agreement. *See* ECF No. 26 at 19-22. Defendants are incorrect in both regards.

### a.   Whether Sysco's reliance was unreasonable as a matter of law

Defendants are incorrect that Sysco's reliance was unreasonable as a matter of law. Defendants argue that: (1) Sysco never alleges what type of inspection Remcoda promised; (2) Sysco knew the gloves would be manufactured at different facilities; and (3) Sysco had no good basis to understand that the gloves it ordered were medical devices under the FDCA such that Defendants had an independent duty to Sysco regarding the gloves' composition.

At the motion-to-dismiss stage, "[t]he court may decide issues of justifiable reliance as a matter of law." *ED & F Man Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862, 868 (S.D. Tex. 2010). Nevertheless, such a determination is often improper at this stage because whether reliance was reasonable is a often fact-intensive inquiry. *See, e.g.*, *Jetpay Merch. Servs., LLC v. Miller*, No. CIV.A. 3:07CV0950-G, 2007 WL 2701636, at *5 (N.D. Tex. Sept. 17, 2007) ("[T]he determination of whether [the plaintiff's reliance] was reasonable will require a fact intensive examination, and such an examination is improper at this stage of the case."); *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018) ("Justifiable reliance usually presents a question of fact.").

Here, the question of whether Sysco's reliance was reasonable depends heavily on the facts. As a result, this question is not properly answered at the motion-to-dismiss stage.

**b.  Whether Sysco disclaimed any reliance**

Defendants' argument that Sysco disclaimed reliance in the agreement is likewise incorrect. Typically, "a merger clause can be avoided based on fraud in the inducement." *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003) (citation omitted). However, "a fraud claim can be negated where a merger clause evinces a party's clear and unequivocal expression of intent to disclaim reliance on specific representations." *Id.* The question, therefore, is whether the merger clause here disclaims reliance on the alleged representations.

The merger clause in the Contract states that the Agreement is "the entire understanding among the parties with respect to the subject matter hereof and supersedes all negotiations and prior discussions and writings between the parties." ECF No. 1-1 § 16.

In *Italian Cowboy Partners, Ltd. v. Prudential Insurance Co. of America*, 341 S.W.3d 323, 336 (Tex. 2011), the Texas Supreme Court reiterated its holding "that to disclaim reliance, parties must use clear and unequivocal language." The reason for this rule is "to protect parties from unintentionally waiving a claim for fraud," while still allowing parties to contract to "fully and finally resolve disputes between them." *Id.* at 332 (citation omitted).

In *Italian Cowboy*, the court pointed to its previous holding in *Schlumberger Technology Corp. v. Swanson*, 969, S.W.2d 171 (Tex. 1997), to explain that "fraudulent inducement is almost always grounds to set aside a contract despite a merger clause, but in certain circumstances, it may be possible for a contract's terms to preclude a claim for fraudulent inducement by a clear and specific disclaimer-of-reliance clause." *Italian Cowboy*, 341 S.W.3d at 332. This principle was based on upholding the parties' intent: "[a]n all-embracing disclaimer

of any and all representations . . . shows the parties' clear intent." *Id.* at 333 (quoting *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 58 (Tex. 2008).

In other words, "[p]ure merger clauses, without an expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement" do not disclaim reliance. *Id.* at 334. On the other hand, when parties expressly disclaim reliance on other representations, that disclaimer of reliance must be given legal effect. *Id.* at 335. In *Italian Cowboy*, two aspects of the contract were particularly notable: (1) it disclaimed only the fact that no other representations were made but did not disclaim reliance on certain representations, *id.* at 335; and (2) the contract did not mention reliance on any representations at all, *id.*

**Prior to** *Italian Cowboy*, the Fifth Circuit held in *Armstrong*, 333 F.3d at 571, that a merger clause was an "unequivocal disclaimer[] of reliance" when it stated that "[t]his Agreement shall constitute the entire contract between the parties and supercedes all existing agreements between them, whether oral or written, with respect to the subject matter hereof." See also *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403-04 (5th Cir. 2000) (merger clause superseding all prior "agreements, communications, or understandings" validly disclaimed reliance). **After** *Italian Cowboy*, however, the Fifth Circuit held that a merger clause failed to disclaim reliance when it stated that the Agreement "'supersedes all prior agreements and understandings' and constitutes the 'entire agreement.'" *LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 460 (5th Cir. 2011). In holding that the language failed to disclaim reliance, the Fifth Circuit focused on two issues: first, that "the clause makes no mention of 'representations'"; and, second, that the clause "does not expressly disclaim reliance on any representations nor expressly waive fraud claims." *Id.*

These two considerations cut in opposite directions in this case. First, *LHC Nashua* emphasized that the merger clause there discussed only "agreements and understandings," and not "representations." *Id.* Here, by contrast, the merger clause states that the Agreement "supersedes all negotiations and prior discussions and writings." ECF No. 1-1 § 16. The reference to "negotiations and prior discussions and writings" is broader than a reference to prior agreements; it instead is akin to a reference to "representations" that the Fifth Circuit noted was absent in *LHS Nashua Partnership*. This language, therefore, cuts in favor of a finding that the merger clause here disclaimed any reliance.

That being said, the Contract here makes no mention of "reliance." *Italian Cowboy* emphasized that a disclaimer of reliance must be "clear and unequivocal" and focused on whether the contract talks explicitly about *reliance*. 341 S.W.3d at 335-36. *Italian Cowboy* noted that "the term 'rely' does not appear in any form, either in terms of relying on the other party's representations, or in relying solely on one's own judgment." *Id.* at 336. It contrasted the clause at issue with the contracts in *Schlumberger* and *Forest Oil*, where the parties disclaimed reliance explicitly by stating that they did not "rely[] upon any statement or representation" of the other party. *Id.* (citations omitted).

This Court has located no case postdating *Italian Cowboy* in which either the Texas Supreme Court or Fifth Circuit has held that a party disclaimed reliance absent a contract that used the term "rely" or "reliance." *Compare Transcor Astra Grp. S.A. v. Petrobras Am. Inc.* 650 S.W. 3d 462, 472-77 & n.10 (Tex. 2022) (disclaimer of reliance was enforceable when agreement stated that the parties are "**not relying** upon any statement or representation of any agent of the opposing parties" (emphasis added)), *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019) (parties disclaimed reliance based on language that "neither

party is **relying** upon any representation that is not specified in this [agreement]" (emphasis added)), *and Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 296 (5th Cir. 2016) (valid disclaimer of reliance when agreement stated that "in executing the agreement, the customer was **not relying** on any advice or advertisement of [the other party]" (cleaned up) (emphasis added)) *with LHC Nashua P'ship*, 659 F.3d at 460 (no valid disclaimer of reliance when merger clause stated only "that the agreement supersedes previous 'agreements' and 'understandings' and constitutes 'the entire agreement'") *and IAS Servs. Grp. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 651 (5th Cir. 2018) (no disclaimer of reliance where contract was ambiguous).

In sum, the Court finds that the merger clause at issue is insufficiently specific to disclaim all reliance on any prior representation.

### 3. Particularity

Next, Defendants argue that Sysco fails to plead fraud with the level of particularity required under Rule 9(b). Defendants are incorrect.

Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This rule "demands the who, what, when, and where to be laid out *before* access to the discovery process is granted." *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023) (cleaned up). "Plaintiffs must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (cleaned up).

Defendants argue that (1) Sysco failed to allege "to whom" any misrepresentations were made; and (2) Sysco failed to allege the manner in which misrepresentations were made by failing to allege (a) how meetings were conducted, (b) which misrepresentations were made

during meetings, (c) the dates of any meetings, and (d) how any particular statements made in meetings were false.

First, Defendants are incorrect that Sysco must allege "to whom" any misrepresentations are made. In support of this claim, Defendants cite only to *Reule v. Sherwood Valley I Council of Co-Owners, Inc.,* No. CV H-07-03170, 2008 WL 11463658, at *3 (S.D. Tex. June 13, 2008) (Ellison, J.). In *Reule*, this Court noted that there were "no allegation[s] of which Defendant said what, on what occasion, and to whom, that is sufficient to put Defendants on notice of what Plaintiff's claims actually are." *Id.* It is true that the Court *Reule* noted that the pleadings failed to specify "to whom" the statements were made. But this was merely part of a broader observation that the pleadings lacked specificity and did not create a requirement that this element must be alleged with particularity.

Further, Defendants are incorrect that Sysco failed to allege the manner in which misrepresentations were made. Sysco alleges that Garson made false representations during meetings and by email. ECF No. 1 ¶¶ 24-26. Sysco's failure to specify whether the meetings were remote or in person does not implicate Rule 9(b). Sysco also alleges which misrepresentations were made—namely, that Defendants had provided nitrile gloves to Sysco. *Id.* Several dates of emails and meetings are also included. *See id.* Finally, Sysco pleads that these claims were false because Sysco alleges that the gloves were not made of nitrile and were not properly inspected.

### 4.  Garson's Liability

The last issue with respect to the fraud-based claims is whether Sysco stated a plausible claim against Remy Garson personally. "Texas has long had two methods for holding individual corporate agents or officers personally liable when they are acting within the course and scope of

14

their employment or role as corporate agents – piercing the corporate veil or direct individual liability." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 664 (W.D. Tex. 2019). Sysco alleges the latter theory: that Garson is directly liable.

Defendants argue that *Bates*, which does not bind this court, is inconsistent with a more recent case, which also does not bind this court. This latter case explained that "pursuant to section 21.223 of the Texas Business and Organizations Code, an individual cannot be sued for the actions of his company unless the individual perpetrated actual fraud on the obligee primarily for his or her direct personal benefit." *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 698 (S.D. Tex. 2020).

These cases are not inconsistent. *R.P. Small* addresses only claims of liability pursuant to § 21.223 of the Business and Organizations Code. This provision allows for the piercing of the corporate veil. But *R.P. Small*'s analysis of this provision does not bear on the entirely separate theory of liability that Sysco pursues: direct individual liability. This is a distinct theory of liability, *see Bates*, 361 F. Supp. 3d at 666, and Defendants do not advance any independent arguments against this theory.

### 5.  Summary

Sysco's fraud-based claims may proceed to the extent that they concern misstatements of existing facts. The only such representations adequately alleged in the Complaint are statements related to gloves that had already been provided to Sysco. With respect to those statements, Sysco plausibly alleges reliance and pleads fraud with sufficient particularity.

### C.  Count 4: Breach of Contract

Sysco next alleges that Defendants breached their contractual obligations. Defendants respond that this claim fails because Sysco's revocation of acceptance was unreasonable. In

particular, Defendants argue that Sysco accepted delivery in February 2021 but did not attempt to revoke the acceptance until June 2022. This delay, Defendants argue, was unreasonable.

At this stage, the Court must reject Defendants' argument. Whether the delay was unreasonable is a question of fact. *See Hess Corp. v. Schlumberger Tech. Corp*., No. CV H-16-3415, 2019 WL 5846675, at *9-10 (S.D. Tex. Nov. 7, 2019). Sysco's breach-of-contract claim may proceed.

### D.  Counts 5 and 6: Breach of Express and Implied Warranties

Sysco also alleges that Defendants breached express and implied warranties. Specifically, Sysco alleges that Defendants made express warranties that the gloves they sold would be made of nitrile, latex-free, and compliant with the FDCA. ECF No. 1 ¶ 82. Sysco further alleges that Defendants warranted that the gloves were merchantable, reasonably fit, and safe for their intended purpose. *Id.* ¶ 88. Defendants argue that Sysco's breach-of-warranty claims should be dismissed for three reasons.

First, Defendants argue that Sysco cannot simultaneously proceed on theories of breach of contract and breach of warranty. This argument is incorrect. Even if two claims cannot both succeed—an issue that the Court does not decide at this juncture—Sysco is permitted to plead the two claims in the alternative. *See* Fed. R. Civ. P. 8(d)(2).

Second, Defendants argue that the breach-of-express-warranty claim fails because any alleged express warranties were simply promises to perform under the Contract. Texas law "distinguish[ed] between promises which are merely terms of the Contract and promises which rise to the level of warranties." *Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co*., 832 F.2d 1358, 1375 (5th Cir. 1987); *see Patton v. Meridian Sec. Ins. Co.*, No. 3:21-CV-1409-G, 2022 WL 2992878, at *20 (N.D. Tex. July 28, 2022); *Contractor's Source Inc. v. Hanes*

16

*Cos.*, No. CIV.A.09-CV-0069, 2009 WL 6443116, at *6 (S.D. Tex. Dec. 29, 2009) (Ellison, J.).
If Defendants' alleged promises are merely promises to perform under the Contract, Sysco's
express-warranty claim must be dismissed. If, on the other hand, the alleged promises are more
than mere promises to perform, Sysco states a claim for breach of express warranty.

Sysco's Complaint alleges that two express warranties were breached: (1) that the gloves
would be nitrile; and (2) that the gloves would comply with the FDCA. ECF No. 1 ¶ 83.[5]

The first of these warranties was merely a promise to perform under the Contract. The
purchase orders, which are part of the Contract, state that the orders are for nitrile gloves. ECF
No. 26-1 at 6-93. Accordingly, Sysco cannot proceed with an express warranty claim insofar as it
is alleging that Defendants warranted that the gloves would be made of nitrile.

The second of these warranties presents a more difficult question. The Contract states that
the "packaging and labeling" would "compl[y] with provisions, to the extent applicable . . . of . .
. the Federal Food, Drug and Cosmetic Act." ECF No. 1-1 at 3. As discussed above, Sysco
plausibly alleges that the FDCA applies. Discovery will shed light on whether the FDCA applies.
If it does, any promise that the packaging and labeling is FDCA compliant would merely be a
promise to perform under the Contract. Sysco would then be unable to pursue a breach-of-
express warranty claim insofar as Sysco claims that the packaging and labeling are not FDCA
compliant. That would not, however, bar Sysco from proceeding with a claim that the gloves
otherwise fail to comply with the FDCA, since the Contract addresses only packaging and
labeling. Further, if discovery shows that the FDCA is *not* applicable, representations that the
gloves meet FDCA specifications would go beyond a mere promise to perform in the Contract.

---

[5] Sysco also alleges that Defendants warranted that the gloves would be latex-free but does not
allege that this warranty was breached. ECF No. 1 ¶¶ 82, 84.

Accordingly, a breach-of-express-warranty claim would be viable. At this stage, therefore, the breach of warranty claim cannot be dismissed.

Sysco may proceed with its express warranty claim only insofar as Sysco alleges that Defendants warranted that the gloves would comply with the FDCA. Sysco may not proceed with respect to any express warranties that the gloves would be made of nitrile.

Third, Defendants argue that Sysco fails to properly plead breach of implied warranty because Sysco has not adequately alleged that the gloves were unfit for their ordinary or particular purpose. "A product is 'unmerchantable' if it 'cannot pass without objection in the trade,' is unfit for ordinary purposes, or does not conform to the promises or factual affirmations on its label." *Coulter v. Deere & Co.*, No. 4:21-CV-2105, 2022 WL 3212999, at *7 (S.D. Tex. Aug. 9, 2022) (quoting *Herbst v. Deere & Co.*, No. 3:21-CV-44, 2021 WL 5567379, at *4 (S.D. Tex. Nov. 29, 2021)). Defendants contend that Sysco's allegations that vinyl gloves are widely used in the food service industry show that the vinyl gloves Defendants delivered are not unfit for their purpose. ECF No. 26 at 32 (quoting ECF No. 1 ¶ 17).

In response, Sysco advances two arguments. First, it argues that it did not contend that the gloves were unfit for their ordinary purpose, only that they were unfit for their particular purpose. But Sysco does not engage with the argument that vinyl gloves can be used in the food service industry. It instead contends that nitrile gloves are preferred for slowing the transmission of COVID-19. ECF No. 30 at 17. But whether nitrile gloves are *preferred* does not go to whether vinyl gloves are *unfit*. Second, Sysco contends that it alleged that the gloves were unmerchantable because they were improperly labeled, which is another way that a product can be unmerchantable. The breach of implied warranty claim, however, contains no allegation based on the labeling. *See* ECF No. 1 ¶¶ 87-93.

Count 6—breach of implied warranty—is dismissed. Count 5—breach of express warranty—may proceed.

### E.  Count 7: Negligence

Sysco next brings a negligence claim against Defendants. This claim is barred by the economic loss rule. "Under Texas's economic loss rule . . . , no duty in tort exists when plaintiffs have suffered only economic losses." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008). "[I]n Texas, the economic loss rule bars plaintiffs from recovering economic losses resulting from a defective product based on a negligence theory." *Id.* (cleaned up). Sysco is correct that the economic loss does not bar *all* recovery for negligence. But Sysco alleges only losses that were the subject of the Contract. Such losses are not recoverable in tort. *See LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 242 n.35 (Tex. 2014) (collecting cases).

### F.  Count 8: Civil Conspiracy

Sysco also pleads a civil-conspiracy claim. Civil conspiracy requires proof of: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir. 2005) (citation omitted).

Remy Garson's acts cannot give rise to any civil conspiracy claim. "[T]he acts of a corporate agent are the acts of the corporation, and a corporation cannot conspire with itself." *Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996). Remy Garson is the CEO of both Remcoda and IBrands. ECF No. 1. ¶¶ 7-8. He cannot conspire with either company.

Nor can Remcoda and IBrands conspire with each other. Again, a corporation cannot conspire with itself. Sysco claims conspiracy yet separately claims that IBrands and Remcoda

"have been unified in ownership and interest," "are collectively being run as a single business enterprise," and "there is such unity between Remcoda and IBrands that separateness has ceased to exist."  ECF No. 1 ¶ 122. To allege that Remcoda and IBrands are separate contradicts these allegations. Sysco argues that it is merely pleading in the alternative. This goes beyond that. Sysco may be permitted to plead alternative legal theories, but here it alleged contradictory facts.

Count 8 for civil conspiracy is dismissed.

### G.  Count 9: Assisting and Participating

Sysco also brings an assisting-and-participating claim against Garson and IBrands. To establish "assisting and participating" liability, Sysco "must show: (1) the primary actor's activity accomplished a tortious result; (2) the . . . Defendants provided substantial assistance to the primary actor in accomplishing the tortious result; (3) the . . . Defendants' conduct, separate from the primary actor's, was a breach of duty to the Plaintiff[]; and (4) the . . . Defendants' participation was a substantial factor in causing the tort." *Premier Rsch. Labs, LP v. Nurman*, No. A-13-CA-069-SS, 2014 WL 978477, at *3 (W.D. Tex. Mar. 12, 2014).[6]

Sysco fails adequately to allege the third prong. Specifically, Sysco fails to allege facts to show that Garson or IBrands breached a duty independently of Remcoda's duties. Count 9 for assisting and participating is dismissed.

### H.  Counts 10 and 11: Joint Enterprise Liability and Alter Ego Liability

Next, Sysco brings claims for joint enterprise liability and alter ego liability against Remcoda and IBrands. The Motion to Dismiss is denied with respect to these claims.

"Joint enterprise liability makes each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other." *Tex. Dep't of Transp. v. Able,* 35

---

[6] The parties dispute whether the claim is available under Texas law. The Court does not resolve this question because the claim fails regardless.

S.W.3d 608, 613 (Tex. 2000) (cleaned up). For there to be joint enterprise liability, there must be: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id.* (citation omitted).

Defendants argue that Sysco fails to allege any agreement or common purpose. This is incorrect. Sysco alleges that the profits are shared among the companies, that the executive teams are identical, that the companies equally directed the business relationship with Sysco, that funds are commingled, and that the two entities use each other's property and pay and guarantee the debts of each other. ECF No. 1 ¶¶ 9, 118-19. This adequately alleges that Remcoda and IBrands had the common purpose of receiving money from Sysco in exchange for gloves.

Sysco also alleges alter ego liability. The Court need not decide whether New York or Delaware law applies because the parties agree that the relevant law is the same in either jurisdiction. Under an alter ego theory of liability, "[a] firm may be liable for the acts of a wrongdoer if the wrongdoer is the other's *alter ego*." *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 291 (S.D.N.Y. 2005). "That is, New York will disregard the corporate form when the corporation has been so dominated by an individual or another corporation, and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and this domination was used to commit a fraud or other wrong that causes the plaintiff's loss." *Id.* at 291-92 (cleaned up). "Whether a wrongdoer is a defendant's alter ego is a fact specific matter that turns on such factors as the failure to adhere to corporate formalities, undercapitalization, intermingling of funds, overlap in ownership, staff and directorship, common use of office space, the degree of discretion shown by the wrongdoer, whether the

21

dealings between the entities are at arms length, and whether the corporations are treated as independent profit centers." *Id.* at 292 (cleaned up).

Here, Sysco sufficiently alleges domination and control. Sysco alleges that IBrands and Remcoda "share an office address," "have a complete overlap in executives and directors" "are not treated as independent profit center," commingle their finds," "do not deal with each other at arm's length," "use each other's property as if it were their own," and "pay and guarantee the debts of each other." ECF No. 1. ¶¶ 6, 9. Further, "Remcoda's owners, executives, and directors use IBrands email addresses to conduct business purportedly on behalf of Remcoda." *Id.* ¶ 9.

Further, Sysco adequately alleges that the domination was used to commit fraud because Remcoda executed contracts while IBrands had the money, and Sysco alleges that Defendants used this structure as an effort to shield them from liability.

Counts 10 and 11 may proceed.

### I.  Count 12: Unjust Enrichment

The parties also dispute whether Sysco may proceed with its unjust enrichment claim. It cannot.

"In Texas, unjust enrichment is based on quasi-contract and is unavailable when a valid, express contract governing the subject matter of the dispute exists." *Dick v. Colo. Hous. Enters., L.L.C.*, 780 F. App'x 121, 126 (5th Cir. 2019) (quoting *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001)). Where "the complaint never alleges, even in the alternative, that there was no valid express contract to govern the parties' dealings," a plaintiff cannot plead an unjust enrichment claim in the alternative. *Id.*

Accordingly, Count 12 is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED** in part:

- Counts 1-3 (fraud-based claims) may proceed to the extent that Sysco alleges that Defendants misrepresented facts about the gloves that had already been delivered.

- Count 4 (breach of contract) may proceed.

- Count 5 (breach of express warranty) may proceed to the extent that Sysco alleges that Defendants breached their express warranty that the gloves complied with the FDCA.

- Counts 10 (joint enterprise liability) and Count 11 (alter ego liability) may proceed.

- Count 6 (breach of implied warranty), Count 7 (negligence), Count 8 (civil conspiracy), Count 9 (assisting and participating) and Count 12 (unjust enrichment) are **DISMISSED**.

If it chooses, Sysco may amend its Complaint. Any Amended Complaint shall be filed no later than February 17, 2023.

Finally, Defendants' Motion for Protective Order, ECF No. 32, is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 6th day of February, 2023.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE